UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
AT LEXINGTON

| | |
|---|---|
| EVA HAMILTON,<br><br>    Plaintiff,<br><br>v.<br><br>ROBERT A. McDONALD, in his official Capacity as Secretary of Veterans Affair<br><br>    Defendant. | CIVIL ACTION NO. 5:15-243-KKC<br><br><br>**OPINION AND ORDER** |

\*\*\* \*\*\* \*\*\*

This matter is before the Court on the motion to dismiss or, in the alternative, motion for summary judgment (DE 32) filed by the defendant. The plaintiff, who was an employee of the Veterans Administration, asserts that the VA failed to promote her because of her age.

    I.    Background

The facts in this matter are not in dispute. The plaintiff Eva Hamilton was hired by the Veterans Administration as a Medical Support Assistant in September 2008. (DE 34, Hamilton Dep. at 19.) She served in that position until 2015, when she began working in the VA data validation unit. (DE 34, Hamilton Dep. at 19.) As a Medical Support Assistant, Hamilton's duties included "a lot of customer service." For instance, she checked patients in and made sure that patient paperwork was given to the appropriate staff and that patients were not left waiting in the waiting area. (DE 34, Hamilton Dep. at 21.)

On January 30, 2014, while Hamilton was still a Medical Support Assistant, the VA announced a vacancy for the position of Supervisory Medical Support Assistant, referred to

as Patient Aligned Care Team Supervisor or PACT Team Supervisor. (DE 32-2, EEO R. at CM-ECF p. 46.) Hamilton and 20 other individuals applied for the position. (DE 32-2, EEO R. at CM-ECF p. 39.) One of those individuals was Kristina Curry who, like Hamilton, was then employed as a Medical Support Assistant. Curry was hired at the VA in 2013. (DE 29, Curry Dep. at 6; DE 33-3, Curry Resume.)

James Branham, Chief of Ambulatory Care in Health Administration Service ("HAS") during the relevant time period, designed the application process. (DE 28, Branham Dep. at 4-5.) He attended high school with Curry and has known her for more than 25 years. (DE 28, Branham Dep. at 6-7.) Branham and his wife are both personal friends of Curry. (DE 28, Branham Dep. at 7.)

He testified that the method he employed for hiring the PACT Team Supervisor was based on a hiring method employed by the VA's nursing department. (DE 28, Branham Dep. at 5, 12.) Branham was on sabbatical in the VA nursing department for five months. (DE 28, Branham Dep. at 12.) He described the hiring method in nursing as a "two-panel. . . Performance Based Interview process." (DE 28, Branham Dep. at 12.) He testified that the Performance Based Interview (PBI) process is "kind of a situational based process that looks at specific things that we're interested in: customer service, technical capability, characteristics, knowledge, experience, et cetera." (DE 28, Branham Dep. at 21.) Branham thought the two-panel process allowed for different perspectives and questions and that it allowed more people the opportunity to evaluate the applicants. (DE 28, Branham Dep. at 12.)

The PACT supervisor position was the first supervisory position opening in HAS after Branham returned to the department from nursing and he wanted to employ the two-panel hiring process to fill it. (DE 28, Branham Dep. at 12-13.) Two panels of VA personnel conducted a separate five-question interview of all 19 applicants. (DE 32-2, EEO R. at CM-

ECF p. 39.) Branham selected the members of each panel. (DE 28, Branham Dep. at 22.) Each applicant was interviewed by both panels. (DE 32-2, EEO R. at CM-ECF p. 39.) Each panel member scored each applicant.

Hamilton's total score from the first panel was 65. Curry's was 55. The highest score received from the first panel by any applicant was 76 and the lowest was 31. (DE 32-2, EEO R. at CM-ECF pp. 40-41.)Hamilton's total score from the second panel was 49 and Curry's was 50. The highest total score received from the second panel for any applicant was 57 and the lowest was 37. (DE 32-2, EEO R. at CM-ECF p. 41.)

After the interviews, but before calculating the interview scores, each panel was then asked to recommend the top five or six applicants for a second round of interviews. (DE 32-2, EEO R. at CM-ECF p. 39.) Because only two applicants were on both panels' list of recommendations, the VA asked each panel member to provide their third and fourth recommendations. (DE 32-2, EEO R. at CM-ECF p. 40.) Neither Hamilton nor Curry made both panels' recommendation lists. As to the third and fourth recommendations, the panels agreed that Curry and another individual should receive second interviews. Hamilton was not among the four recommended for a second interview. A fifth applicant was recommended for a second interview based only on her scores. (DE 32-2, EEO R. at CM-ECF p. 40.)

The VA then conducted a second-level interview with these five applicants at which they conducted a 20-minute presentation on "Leadership: My Role in Veteran Centered Healthcare." (DE 32-2, EEO R. at CM-ECF p. 41.) The candidates were evaluated based on "eye contact, presence, content, creativity, knowledge-base, originality, relevance, energy/enthusiasm, professionalism, overall presentation." (DE 32-2, EEO R. at CM-ECF pp. 41-42.)

Prior to scoring the candidates, the panel members were asked to recommend two applicants for a third and final round of interviews. (DE 32-2, EEO R. at CM-ECF p. 42.) The panel members agreed to send Curry and another applicant for a third round of interviews with Branham and the Assistant Chief, HAS. At the interviews, the final two applicants were asked to repeat their presentation. At the conclusion of their presentation, they were asked five additional questions. (DE 32-2, EEO R. at CM-ECF p. 43.)

Branham and the Assistant Chief, HAS then had an "in-depth conversation" regarding the applicants. In the end, Branham recommended Curry for the position. (DE 32-2, EEO R. at CM-ECF p. 43.) In making his selection, he considered the PBI scores and "personality, knowledge base, education, presentation ability, "Best/Right Fit," experience, creativity/originality, approachability, leadership ability, performance, conduct, and references." (DE 32-2, EEO R. at CM-ECF p. 43.)

Branham recommended Curry to Carol Stevens, Chief of HAS, who was the selecting official and Stevens selected Curry for the position. (DE 30, Stevens Dep. at 13.) Curry stated she made the selection based on "all of the documentation, the panel, the references" and Branham's recommendation. (DE 30, Stevens Dep. at 13.) She testified that the documentation consisted of the "resume, the panel scores, the references." (DE 30, Stevens Dep. at 13.) By e-mail to staff dated March 18, 2014, Branham announced that Curry had been selected for the position. (DE 32-2, EEO R. at CM-ECF p. 25.)

On April 3, 2014, Hamilton complained to VA management included Laura Faulkner, Chief of Human Resources, regarding alleged irregularities in the selection process. (DE 33-2, Documents at CM-ECF p. 2.) Faulkner reviewed the merit promotion file and determined there was a problem with the selection process, "including there were several different panels interviewing different people." (DE 32-2, EEO R. at CM-ECF p. 15.) Thus, Faulkner

4

canceled the posting and "re-advertised the position to give everyone an opportunity in the selection process." (DE 32-2, EEO R. at CM-ECF p. 15.)

Stevens testified that she and Faulkner together decided to cancel Curry's selection. (DE 30, Stevens Dep. at 10-11.) She testified that, "HR looked at it and said this is different from the normal process, so they recommended that we can that announcement and re-announce, as we did." (DE 30, Stevens Dep. at 11.) She testified that the "normal process" for hiring "was to have one interview panel who would interview all of the candidates and then they would submit their scores." (DE 30, Stevens Dep. at 12.) She testified, "In the ordinary course, the top candidates would be under further review. We would do reference checks and . . . we would look at all the documentation . . . prior to making a decision." (DE 30, Stevens Dep. at 12.) The documentation would include resumes. (DE 30, Stevens Dep. at 12.)

On April 28, 2014, Faulkner posted a new job announcement for the position. (DE 32-2, EEO R. at CM-ECF p. 26.) Both Hamilton and Curry again applied for the position. This time, Curry's resume reflected that she was promoted to PACT Supervisor in March 2014 and it also provided an extensive list of her responsibilities in this position. (DE 33-3, Resume at CM-ECF p. 3.) A panel of four individuals recommended the three candidates with the highest PCI score for final consideration. Hamilton and Curry were among the three. (DE 32-2, EEO R. at CM-ECF pp. 37-38, 44.) Of the three, Curry received the second highest score (152) and Hamilton received the third highest score (152). A third applicant received the highest score (158). (DE 32-2, EEO R. at CM-ECF pp. 37-38.)

Stevens was the selecting official. (DE 32-2, EEO R. at CM-ECF p. 55.) She conducted second-level interviews of the three candidates. (DE 32-2, EEO R. at CM-ECF p. 20, 55.) Stevens testified that she does not conduct a second round of interviews for every position

but she did for this one because the top three candidates' scores were just eight points apart and the position was a management position. (DE 30, Stevens Dep. at 20-21.)

On June 23, 2014, Smith submitted her justification for selecting Curry. (DE 32-2, EEO R. at CM-ECF p. 32.) This was prior to her interviews with the candidates. (DE 30, Stevens Dep. at 21.) Stevens explained that she drafted the justification for hiring Curry before the interviews because, at that time, the HR chief had not recommended that she conduct a second round of interviews for the position. (DE 30, Stevens Dep. at 21.)

Stevens interviewed Curry on July 11, 2014. (DE 32-2, EEO R. at CM-ECF p. 34.) In her justification for selecting Curry, Stevens stated that Curry "has experience both as a supervisor in the private sector, and as a current medical support assistant at the VA. These experiences make her the most qualified candidate for this position." (DE 32-2, EEO R. at CM-ECF p. 20.)

Stevens testified that the major distinction between Curry and Hamilton was that Curry had supervisory experience and that Hamilton did not. (DE 32-2, EEO R. at CM-ECF pp. 19.) She testified that the primary reason she selected Curry was her supervisory experience. (DE 32-2, EEO R. at CM-ECF p. 22.) She testified that there was nothing other than supervisory experience that separated Curry and Hamilton. (DE 32-2, EEO R. at CM-ECF pp. 22-23.)

The PACT Supervisor position is a supervisory position, with "full supervisory responsibility for supervising at least one subordinate team leader or supervisor." (DE 32-2, EEO R. at CM-ECF p. 49.) The position's responsibilities include "assigning and evaluating the work of subordinate staff," and "evaluating performance, and taking disciplinary action when necessary." (DE 32-2, EEO R. at CM-ECF p. 49.) To qualify for the position, applicants had to demonstrate the "[a]bility to provide the full range of administrative and supervisory duties which includes assignment of work, performance evaluations, selection

of staff, and recommendation of awards and/or advancements." (DE 32-2, EEO R. at CM-ECF p. 51.)

Curry's resume at that time reflected that she was previously employed by Madison County 911 as a "[r]otating supervisor for third shift." (DE 30, Stevens Dep. at 25, 29 -30, Ex. 5.) Stevens testified that she considered this to be a "private sector" position. (DE 30, Stevens Dep. at 23.) Stevens testified that Curry told her, presumably in the interview, that Curry was a third-shift supervisor. Stevens did not know how many employees Curry supervised in that position and did not ask. (DE 30, Stevens Dep. at 25.) Because the supervisory position was rotating, Stevens understood that Curry was not the shift supervisor for all shifts. Stevens did not know how many shifts that Curry actually supervised. Curry told Simpson that, when Curry served as supervisor, she was responsible for everything that happened during that shift. (DE 30, Stevens Dep. at 25-26.)

On July 27, 2014, Stevens submitted another justification for selecting Curry. She stated that she interviewed Curry, Hamilton, and a third individual for the position. She stated that Curry and the third individual were the final candidates, noting that "[b]oth have previous supervisory knowledge and experience." (DE 32-2, EEO R. at CM-ECF p. 55.) Stevens states that Hamilton "was not part of the final consideration due to no supervisory experience." (DE 32-2, EEO R. at CM-ECF pp. 55.)

After asserting a claim with the EEOC, Hamilton filed this action. In her complaint, she asserts that the VA discriminated against her based on her age and retaliated against her in violation of 29 U.S.C. § 633a.

## II. Analysis

### A. Age discrimination claim

In her complaint, Hamilton alleges age discrimination claims under both 29 U.S.C. §633a(a) ("ADEA") and 42 U.S.C. § 2000e ("Title VII"). The Title VII claim must be

7

dismissed. Title VII prohibits employers from discriminating based on "race, color, religion, sex, or national origin." 42 U.S.C.A. § 2000e-2(a). It does not prohibit age discrimination. Hamilton does not mention the Title VII claim in her response. Accordingly, she has abandoned that claim. *Haddad v. Sec'y, U.S. Dep't of Homeland Sec.*, 610 F. App'x 567, 568-69 (6th Cir. 2015). For these reasons, the Title VII claim will be dismissed.

As to her age discrimination claim under 29 U.S.C. § 633a, that statute applies specifically to the federal government and provides that "all personnel actions affecting employees or applicants for employment who are at least 40 years of age . . . in executive agencies. . . shall be made free from any discrimination based on age." 29 U.S.C. § 633a(a). This provision was added to the ADEA in 1974 to include federal employees in its coverage. *Smith v. Office of Pers. Mgmt.*, 778 F.2d 258, 261 (5th Cir. 1985). It explicitly waives sovereign immunity, providing that any person damaged can bring an action for "legal or equitable relief as will effectuate the purposes of this chapter." 29 U.S.C. § 633a(c).

The VA relies on evidence beyond the pleadings to support its challenge to the ADEA claim. Accordingly, the Court must analyze its motion as one for summary judgment. "When reviewing a motion to dismiss, the district court may not consider matters beyond the complaint." *Hensley Mfg. v. ProPride, Inc.*, 579 F.3d 603, 613 (6th Cir. 2009).

Because Hamilton relies entirely on circumstantial evidence to prove her claim, in determining whether the VA is entitled to summary judgment, the Court applies the three-step analysis set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See Provenzano v. LCI Holdings, Inc.*, 663 F.3d 806, 811–12 (6th Cir. 2011).

For the first step of that analysis, the Court determines whether Hamilton has presented sufficient evidence from which a reasonable jury could find that she has established a prima facie case of age discrimination. *Id*. at 812. If Hamilton meets her burden on the first step, the Court proceeds to the second step to determine whether the VA

has articulated "some legitimate, nondiscriminatory reason" for failing to select Hamilton for the supervisory position. *Id*. If the VA has done so, then the Court goes to the third step of the analysis at which it must determine if Hamilton has presented sufficient evidence from which a reasonable jury could conclude that the VA's proffered reason for failing to promote her "was pretext designed to mask discrimination." *Id*.

As to the first step, to make out a prima facie case of age discrimination based on the VA's failure to promote her, Hamilton must show that (1) she is a member of the protected class; (2) she applied for and was qualified for a promotion; (3) she was considered for and was denied the promotion; and (4) other employees of similar qualifications who were not members of the protected class received promotions at the time the plaintiff's request for promotion was denied. *Id*. at 812-13. The plaintiff's burden at this stage is "not onerous" and is "easily met." *Id*. (quoting *Cline v. Catholic Diocese of Toledo*, 206 F.3d 651, 661 (6th Cir.2000)).

The VA does not dispute that Hamilton has established a prima facie case of age discrimination. The only possible dispute would be as to Hamilton's qualifications under the second and fourth element. The evaluation of these elements – whether Hamilton was qualified for the job and whether her qualifications were similar to Curry's – "must be conducted independently of" the VA's proffered reason for failing to promote her. *Provenzano*, 663 F.3d at 813. The Court cannot conflate the prima facie and pretext stages. *Id*.

At this point, the Court will conduct only a "general weighing" of the qualifications of Hamilton and Curry. *Id*. at 813-14. This "light review must be distinguished from the more rigorous comparison conducted at the later stages of the *McDonnell Douglas* analysis." *Id*. at 814. "[T]his careful distinction is especially necessary in cases such as this one, where

the employer asserts as its nondiscriminatory reason for failing to promote the plaintiff that it chose to hire a candidate it considered more qualified." *Id*. The burden on the plaintiff at this stage "is not intended to be onerous" and Hamilton does not have to establish that she and Curry "had the exact same qualifications." *Id*. "Instead, what is required in a failure to promote case is for the plaintiff to show she possesses 'similar qualifications' to the employee who received the promotion." *Id*.

Hamilton has presented sufficient evidence to permit a reasonable trier of fact to conclude that she and Curry were at least similarly qualified for the PACT supervisor position. Hamilton had served as a PACT Medical Support Assistant longer than Curry and had developed operating procedures and educational materials for training new Medical Support Assistants. She had been selected as part of a team to train other PACT teams across the state and she had assisted the current PACT supervisor. (DE 32-2, EEO R. at CM-ECF p. 5; DE 34, Hamilton Dep. at 22, 41.) In contrast, Curry also had some experience as a PACT Medical Support Assistant and her resume reflected some prior supervisory experience, which Hamilton did not have. This is sufficient evidence of similar qualifications at this point in the analysis.

The VA's argument on summary judgment goes instead to Hamilton's showing on pretext. It argues that Hamilton has not produced any evidence that its proffered reason for hiring Curry – her supervisory experience – is a pretext for discrimination. A plaintiff can refute the proffered reason by showing that it 1) has no basis in fact; 2) did not actually motivate the failure to promote the plaintiff; or 3) was insufficient to warrant the defendant's failure to promote her. *Id*. at 815.

As to the first manner of refuting the VA's reason for hiring Curry, Hamilton must present evidence that the proffered reason is "factually false." *Manzer v. Diamond Shamrock Chemicals Co.*, 29 F.3d 1078, 1084 (6th Cir. 1994). The third manner of rebuttal

10

requires evidence that other employees, especially those not in the protected class, were promoted to PACT supervisor without prior supervisory experience. "These two types of rebuttals are direct attacks on the credibility of the employer's proffered motivation . . . ." *Id*. The second manner of refuting the employer's proffered reason is "of an entirely different ilk." *Id*. It is an indirect attack on the employer's credibility that requires circumstantial evidence of discrimination indicating "that the employer's explanation is a pret*e*xt or coverup." *Id*. For this kind of rebuttal, "the plaintiff may not rely simply upon his prima facie evidence but must, instead, introduce additional evidence of age discrimination." *Id*.

To rebut the VA's argument that it did not promote her because she did not have supervisory experience and Curry did, Hamilton relies on five arguments. First, Hamilton argues that she had superior qualifications and that Curry was not even eligible for promotion because she was still in her probationary period. As to Hamilton's argument that she was more qualified than Curry, the Sixth Circuit has acknowledged that "evidence of comparative qualifications may be probative of pretext." *Bender v. Hecht's Dept. Stores*, 455 F.3d 612, 626 (6th Cir.2006). Nevertheless, it has also recognized that "employers are generally free to choose among qualified candidates." *Id*. (citation and quotations omitted.)

Thus, "evidence that a rejected applicant was as qualified or marginally more qualified than the successful candidate is insufficient, in and of itself, to raise a genuine issue of fact that the employer's proffered legitimate, non-discriminatory rationale was pretextual." *Bender*, 455 F.3d at 627. "[I]n the case in which there is little or no other probative evidence of discrimination, to survive summary judgment the rejected applicant's qualifications must be so significantly better than the successful applicant's qualifications that no reasonable employer would have chosen the latter applicant over the former." *Id*. at 627. "In the case in

11

which a plaintiff does provide other probative evidence of discrimination, that evidence, taken together with evidence that the plaintiff was as qualified as or better qualified than the successful applicant, might well result in the plaintiff's claim surviving summary judgment."*Id.* at 626–27.

Hamilton's qualifications are not so significantly better than Curry's that, standing alone, they raise a genuine issue of material fact as to whether the reason the VA failed to promote Hamilton was her age. Nevertheless, a reasonable juror could find that she was as qualified as Curry. Accordingly, evidence of Hamilton's qualifications combined with any other probative evidence of discrimination could permit her claim to survive summary judgment.

As to Hamilton's argument that Curry was not eligible for promotion, she does not present any evidence that it was a VA policy that employees could not be promoted during their probationary period. She cites to Branham's deposition. Branham, however, actually testified that he was not aware of a VA policy or procedure that prohibits an employee during the one-year probationary period from applying for a higher grade or promotion. (DE 28, Branham Dep. at 11.)

Second, Hamilton argues that the VA used subjective criteria in hiring Curry. It is true that subjective evaluations must be "carefully scrutinized." *Scott v. Eastman Chemical Co.*, 275 F. App'x 466, 476 (6th Cir. 2008) (citation omitted). "Courts have frequently noted that subjective evaluation processes intended to recognize merit provide ready mechanisms for discrimination." *Grano v. Dep't of Dev. of City of Columbus*, 699 F.2d 836, 837 (6th Cir. 1983). "Subjective employment evaluations, however, are not illegal per se. The ultimate issue in each case is whether the subjective criteria were used to disguise discriminatory action." *Id.* In this case, Hamilton points to no evidence nor does she even allege that the subjective criteria utilized somehow disfavored or targeted older workers. *See Anderson v.*

12

*Otis Elevator Co.*, 923 F. Supp. 2d 1032, 1068 (E.D. Mich. 2013). Accordingly, the fact that the promotion was based on subjective criteria will not, alone, permit Hamilton's claim to survive summary judgment. Nevertheless, it can be considered with other evidence of discrimination to prevent summary judgment.

Third, Hamilton argues that the VA deviated from its normal procedures in hiring for the PACT supervisor. "[D]eviation from established policy or practice may be evidence of pretext." *Dunn v. Trustees of Boston Univ.*, 761 F.3d 63, 73 (1st Cir. 2014) (quoting *Brennan v. GTE Gov't Sys. Corp.*,150 F.3d 21, 29 (1st Cir. 1998)). There is no question that the employment practices utilized by the VA and devised by Branham when Curry was first selected in March deviated from its standard procedures.  Hamilton does not explain, however, how the new procedures made it more possible to select Curry or to discriminate against older workers. The new procedures involved more people. It would seem that would make discrimination less possible.

Further, the procedures employed to hire Curry in March ultimately became moot because Curry's promotion was canceled. After re-announcing the position, the VA returned to its normal hiring procedures. Hamilton does not argue that, with the second hiring process, the VA somehow deviated from its normal practice and procedure.

Fourth, Hamilton points out that the VA did not indicate during the initial hiring process in March that it chose Curry based on her supervisory experience. She argues this is evidence that supervisory experience was not the deciding factor in July either. The VA does not point to any evidence in the record that the VA chose Curry in March based on her supervisory experience.

Branham indicated that in recommending Curry for the position he considered 12 characteristics: "personality, knowledge base, education, presentation ability, 'Best/Right Fit,' experience, creativity/originality, approachability, leadership ability, performance,

13

conduct, and references." (DE 32-2, EEO R. at CM-ECF p. 43.) Supervisory experience is not mentioned. Simpson actually made the final decision. In her deposition, she did not mention supervisory experience as a factor in her March decision. (DE 30, Stevens Dep. at 13-14.)

In the briefing, the VA does not even argue that it chose Curry in March because of her supervisory experience. Instead, it argues that it chose Curry at that time because "Hamilton's interview scores rated far below that of several other candidates, not just that of the ultimate selectee." (DE 36, Reply at 3; DE 32-1, Mem. at 13.) The fact that supervisory experience was not a determining factor in the March employment decision is evidence that it did not actually motivate the VA's decision in July either. Further, Simpson's testimony indicates that, when she interviewed Curry in July, she did not extensively inquire about Curry's prior supervisory experience. She did not ask how often Curry supervised shifts at the Madison County 911 or how many people she supervised.

Finally, Hamilton points out that Curry's resume that she submitted after the position was re-advertised indicated that she had served as PACT supervisor since March 2014. Hamilton argues this is evidence that the VA discriminated against Hamilton in selecting Curry in July. There is no evidence, however, that the VA decided the contents of the resume or encouraged Curry to include the PACT supervisor position. Further, there is no allegation that the VA even considered that Curry had been appointed to the position in March when it rehired for the position in July. Accordingly, the resume cannot constitute evidence of the VA's discriminatory intent.

Considering the evidence in its totality, the Court finds that Hamilton has presented sufficient evidence to create a genuine issue of fact as to whether the VA failed to promote her in July because of her age. In making this determination, the Court does not rely on any one piece of evidence but rather considers the fact that Hamilton was at least as

14

qualified as Curry; that the VA used subjective criteria in hiring Curry; that the VA did not indicate during the initial hiring process in March that supervisory experience was the primary factor it would consider in making the selection; and that Simpson did not inquire extensively about Curry's prior supervisory experience in the July interview. This is sufficient evidence that Hamilton's lack of supervisory experience was insufficient to warrant the VA's failure to promote her. *Id.* at 815. Taken as a whole, this is sufficient circumstantial evidence of discrimination to survive summary judgment.

### B. Retaliation claim

The VA moves for summary judgment on the defendant's retaliation claim. Hamilton does not mention the claim in her response. Accordingly, she has abandoned that claim and it will be dismissed. *Haddad*, 610 F. App'x at 568.

### C. Damages

In her complaint, Hamilton states she seeks lost wages, compensatory damages, liquidated damages, punitive damages, and attorney's fees and costs. In its motion, the VA argues that Hamilton cannot recover liquidated, punitive damages, or attorney's fees and costs against the government. Hamilton agrees that she cannot recover liquidated damages. (DE 33, Response at 8.) She does not respond to the VA's argument that she cannot seek compensatory or punitive damages. Accordingly, she has waived her right to assert a claim for these damages. *Haddad*, 610 F. App'x at 568. Further, such damages are not recoverable under 29 U.S.C. § 633a.

With respect to damages recoverable by government employees, the ADEA provides, "[a]ny person aggrieved may bring a civil action in any Federal district court of competent jurisdiction for such legal or equitable relief as will effectuate the purposes of this chapter." 29 U.S.C. § 633a(c). It also provides that the Equal Employment Opportunity Commission may enforce the statute through "appropriate remedies, including reinstatement or hiring

15

of employees with or without backpay, as will effectuate the policies of this section." 29 U.S.C. § 633a(b).

Because Congress only explicitly provided for reinstatement and backpay, it has not waived sovereign immunity with respect to any other kinds of damages. *Smith v. Office of Pers. Mgmt.*, 778 F.2d 258, 261 (5th Cir. 1985) ("Had Congress intended to allow recovery for other damages besides lost wages, Congress easily could have provided for such a recovery.") *See also Espinueva v. Garrett,* 895 F.2d 1164, 1165 (7th Cir. 1990 ("Neither Title VII nor the ADEA authorizes awards of compensatory or punitive damages, as opposed to 'equitable' relief such as reinstatement and back pay."); *Burns v. Principi*, No. 3:04-0410, 2005 WL 1638733, at *9 (M.D. Tenn. July 6, 2005) ("Federal courts have held the ADEA does not permit public sector employees to recover general, consequential or liquidated damages under the ADEA because the United States has not waived its sovereign immunity.")

Accordingly, Hamilton's claim for compensatory, liquidated, and punitive damages must be dismissed.

As to attorney's fees, "[a]lthough some district courts have held that public sector plaintiffs may recover attorney's fees under the ADEA, the circuit courts of appeal are uniformly holding that § 633a does not expressly provide for an award of attorney's fees against the federal government and therefore, no such award may be made." *Burns*, 2005 WL 1638733, at *10 (citing cases). "Simply put, the generalized language of subsection 633a(c) – authorizing 'such legal or equitable relief as will effectuate the purposes of [the ADEA]' – cannot be interpreted as an express authorization of fee-shifting on Congress' part, much less an unequivocal waiver of the government's sovereign immunity vis a vis awards of attorney's fees." *Boehms v. Crowell*, 139 F.3d 452, 463 (5th Cir. 1998); *See also Nowd v. Rubin*, 76 F.3d 25, 27-28 (1st Cir. 1996); *Lewis v. Fed. Prison Indus., Inc.*, 953 F.2d

16

1277, 1281 (11th Cir. 1992). Thus, Hamilton is not entitled to attorney's fees under the ADEA.

Nevertheless, while Hamilton is not entitled to attorney's fees under the ADEA, if she prevails in this action, she may be entitled to attorney fees under the Equal Access to Justice Act ("EAJA"), 28 U.S.C. § 2412(b). That statute provides that, "[u]nless expressly prohibited by statute, a court may award reasonable fees and expenses of attorneys, in addition to. . . costs . . . to the prevailing party in any civil action brought. . .against the United States or any agency or any official of the United States. . . The United States shall be liable for such fees and expenses to the same extent that any other party would be liable under the common law or under the terms of any statute which specifically provides for such an award." 28 U.S.C.A. § 2412 (b). The parties have not briefed whether Hamilton is entitled to attorney's fees under the EAJA and, accordingly, the Court will not dismiss her claim for those damages at this point.

### III. Conclusion

For all these reasons, the Court hereby ORDERS as follows:

1) the VA's motion to dismiss (DE 32) is GRANTED in part and DENIED in part as follows:

   a) the motion is GRANTED as to Hamilton's claim under 42 U.S.C. § 2000e ("Title VII") and that claim is DISMISSED; and

   b) the motion is otherwise DENIED; and

2) the VA's motion for summary judgment on Hamilton's age discrimination claim under 29 U.S.C. §633a(a) ("ADEA") (DE 32) is GRANTED in part and DENIED in part as follows:.

   a. the motion is GRANTED as to Hamilton's retaliation claim under 29 U.S.C. §633a(a) ("ADEA") and that claim is DISMISSED;

17

    b. the motion is GRANTED as to the Hamilton's claim for compensatory damages, liquidated damages, and punitive damages and her claims for those damages are DISMISSED; and

    c. the motion is otherwise DENIED.

Dated March 27, 2017.

*Karen K. Caldwell*

KAREN K. CALDWELL, CHIEF JUDGE
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY